*ORIGINAL*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | **19-20653** |
| v. | **Victoria A. Roberts** |
| MUSOOD GORGES, | VIO: 18 U.S.C. § 1349 |
| | 18 U.S.C. § 981 |
| | 18 U.S.C. § 982 |
| Defendant. | 21 U.S.C. § 853 |

## SUPERSEDING INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

### GENERAL ALLEGATIONS

At all times relevant to this Superseding Information:

FILED
MAR 17 2020
CLERK'S OFFICE
DETROIT

### The Medicare Program

1. The Medicare program was a federal health care program providing benefits to persons who were 65 years of age or older, or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b). Medicare was also a "Federal health care program" as defined by Title 42, United States Code, Section 1320a-7b(f).

3. The Medicare Program included coverage under four parts: hospital insurance ("Part A"), medical insurance ("Part B"), Medicare Advantage ("Part C"), and prescription drug benefits ("Part D"). Part A covered certain eligible home health care costs for medical services provided by a home health agency to beneficiaries who required home health treatment because of an illness, injury, or medical condition that caused them to be homebound. Part B covered certain physician services, outpatient services, and other services that were medically necessary and not covered by Part A.

4. Payments for home health services under Medicare Part A were typically made directly to a home health agency or provider based on claims submitted to Medicare for qualifying services that were provided to eligible beneficiaries, rather than directly to the beneficiaries.

5. National Government Services, previously called United Government Services, ("NGS") was the CMS contractor for Medicare Part A in the state of Michigan. CMS contracted with NGS and WPS to receive, adjudicate, process, and pay claims. NGS received and processed Medicare Part A claims originating in Michigan in Indianapolis, Indiana.

6. Starting in approximately April 2012, Cahaba Safeguard Administrators LLC ("Cahaba") was the Zone Program Integrity Contractor ("ZPIC") in the State of Michigan. The ZPIC is the contractor charged with investigating fraud, waste, and abuse. In or around April 2015, AdvanceMed replaced Cahaba as the ZPIC.

**Medicare Provider Enrollment and Reimbursement**

7. Medical providers, whether a home health agency, physician, or other health care provider, were able to apply for and obtain a Medicare Provider Identification Number ("PIN") for billing purposes. Upon certification, the medical provider was assigned a PIN. A health care provider who was assigned a Medicare PIN and provided qualifying services to beneficiaries was able to submit claims for reimbursement to Medicare. When the medical provider rendered a qualifying service, the provider submitted a claim for reimbursement to the Medicare contractor that included the PIN assigned to the medical provider.

8. By becoming a participating provider in Medicare, enrolled providers agreed to abide by the policies, procedures, rules, and regulations governing reimbursement. To receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, were required to abide by all provisions of the Social Security Act, the regulations promulgated under the Act,

and applicable policies, procedures, rules, and regulations issued by CMS and its authorized agents and contractors.

9. Medicare providers were provided with online access to Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations. Pursuant to these Medicare manuals, services bulletins, and other materials containing Medicare's rules and regulations, providers were supposed to submit claims to Medicare only for services they rendered, and providers were required to maintain patient records to verify that the services were provided as described on the claim form.

10. A Medicare claim was required to set forth, among other things, the beneficiary's name and Medicare number, the services performed, the date and charge for the services, and the name and provider number of the physician or other health care provider who ordered the services.

11. Medicare reimbursed claims for services only if the services were medically necessary and reasonable.

12. Medicare Part A, through a Medicare contractor, reimbursed participating home health agencies for home health services provided to a Medicare beneficiary only if the beneficiary qualified for home health benefits. A beneficiary qualified for home health benefits only if:

a. the Medicare beneficiary was under the care of a physician who specifically determined a need for home health services and established a plan of care;

b. the Medicare beneficiary was confined to the home, also referred to as "homebound", and a physician certified that the Medicare beneficiary was homebound; and

c. the Medicare beneficiary needed, and a physician certified that the beneficiary needed, skilled nursing services, physical therapy, speech therapy, or occupational therapy.

13. Pursuant to Medicare rules and regulations, a beneficiary was homebound if (1) the individual was confined to the home because of a condition, or due to illness or injury, that restricted the ability of the individual to leave his or her home except with the assistance of another individual, special transportation or the aid of a supportive device (such as crutches, a cane, a wheelchair, or a walker), or if the individual had a condition such that leaving his or her home was medically contraindicated and (2) there exists a normal inability to leave home and leaving home requires a considerable and taxing effort.

14. Medicare regulations under Part A and Part B required home health care providers and physicians to maintain complete and accurate patient medical records reflecting the medical assessment and diagnoses of their patients, as well as records

documenting actual treatment of the patients to whom services were provided and for whom claims for payment were submitted. Medicare required complete and accurate patient medical records so that Medicare could verify that the services were provided as described on the claim form. These records were required to be sufficient to permit Medicare to review the appropriateness of Medicare payments made to the health care provider.

15. To receive reimbursement for a covered service from Medicare, a provider had to submit a claim, either electronically or using a form (*e.g.*, a CMS-1500 form or UB-92), containing the required information appropriately identifying the provider, patient, and services rendered, among other things.

### Federal Anti-Kickback Statute Compliance

16. As a requirement to enroll as a Medicare provider, Medicare required providers to agree to abide by Medicare laws, regulations, and program instructions. Medicare further required providers to certify that they understood that a payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with these laws, regulations, and program instructions, including the Federal Anti-Kickback Statute. Accordingly, Medicare would not pay claims procured through kickbacks and bribes.

### The Home Health Agency

17. Precious Home Health Care, Inc. ("Precious") was a Michigan corporation doing business at 1643 W. Big Beaver Rd., Troy, MI 48084 and 700 E. Big Beaver Rd., Ste. E, Troy, MI 48083. Precious was a home health agency that purportedly provided in-home skilled nursing services, physical therapy, occupational therapy, speech therapy, and other services to patients. Precious was a Medicare provider and submitted claims to Medicare.

### The Defendant

18. MUSOOD GORGES, a resident of Oakland County, Michigan, was a patient recruiter for Precious who referred Medicare beneficiaries to Precious for home health services billed to Medicare.

### <u>COUNT 1</u>
### Conspiracy to Commit Health Care Fraud
### (18 U.S.C. § 1349)

### MUSOOD GORGES

19. Paragraphs 1 through 18 of this Superseding Information are re-alleged and incorporated by reference as if fully set forth herein.

20. Beginning in or around at least July 2015, and continuing through in or around August 2019, the exact dates being unknown to the United States Attorney, in Oakland County, in the Eastern District of Michigan, and elsewhere, the Defendant, MUSOOD GORGES, did willfully and knowingly combine, conspire,

confederate, and agree with each other and others, known and unknown to the United States Attorney, to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

### Purpose of the Conspiracy

21.    It was a purpose of the conspiracy for Defendant MUSOOD GORGES and others to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare for home health services that were medically unnecessary, not eligible for Medicare reimbursement, and not provided as represented; (b) soliciting, receiving, offering, and paying kickbacks and bribes for the purpose of referring Medicare beneficiaries for services that were not eligible for Medicare reimbursement; (c) concealing the submission of false and fraudulent claims to Medicare, the receipt and transfer of the proceeds from the fraud, and the payment of kickbacks and bribes; and (d) diverting proceeds of the fraud for the personal use and benefit of the Defendant and others.

## Manner and Means of the Conspiracy

22. The manner and means by which the Defendant and his co-conspirators sought to accomplish the purpose of the conspiracy included, among other things, the following:

23. In or around December 2010, February 2012, and April 2018, representatives of Precious certified to Medicare that Precious would comply with all Medicare rules and regulations, including that Precious would not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare and that he would refrain from violating the Federal Anti-Kickback Statute.

24. MUSOOD GORGES and others solicited and received kickbacks and bribes in exchange for the referral of Medicare beneficiaries to Precious for home health services billed to Medicare.

25. MUSOOD GORGES and others offered and paid kickbacks and bribes to Medicare beneficiaries and others to induce individuals to provide their Medicare beneficiary information to Precious.

26. MUSOOD GORGES and others devised and participated in a scheme to certify and cause to be certified Medicare beneficiaries for home health services without regard for medical necessity and/or legitimate homebound status.

27. MUSOOD GORGES and others submitted and caused to be submitted, on behalf of Precious, false and fraudulent claims to Medicare for home health

services that were procured through kickbacks and bribes, medically unnecessary, not eligible for Medicare reimbursement, and not provided as represented. Medicare paid Precious approximately $1,132,634 based on these claims.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATIONS
## 18 U.S.C. § 982(a)(7) and/or 18 U.S.C. § 981 with 28 U.S.C. § 2461

28. The above allegations contained in this Superseding Information are incorporated by reference as if set forth fully herein for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 982(a)(7) and/or 18 U.S.C. § 981 with 28 U.S.C. § 2461.

29. As a result of the violation of 18 U.S.C. § 1349, as set forth in this Superseding Information, Defendant MUSOOD GORGES shall forfeit to the United States: (i) any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such violations, pursuant to 18 U.S.C. § 982(a)(7); and (ii) any property, real or personal, that constitutes or is derived from proceeds traceable to the commission of such violations, pursuant to 18 U.S.C. § 981 with 28 U.S.C. § 2461.

30. <u>Money Judgment:</u> Such property includes, but is not limited to, forfeiture money judgments in the amount of $304,500, representing the total

amount of proceeds and/or gross proceeds obtained as a result of the Defendant's violations, as alleged in this Superseding Information.

    31.    <u>Substitute Assets:</u> If the property described above as being subject to forfeiture, as a result of any act or omission of the Defendant:

    a.    Cannot be located upon the exercise of due diligence;

    b.    Has been transferred or sold to, or deposited with, a third party;

    c.    Has been placed beyond the jurisdiction of the Court;

    d.    Has been substantially diminished in value; or

    e.    Has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b), to seek to forfeit any other property of the Defendant up to the value of the forfeitable property described above.

MATTHEW SCHNEIDER
United States Attorney

*/s/ Regina R. McCullough (BEM)*
REGINA MCCULLOUGH
Chief, Health Care Fraud Unit
United States Attorney's Office
Eastern District of Michigan

*/s/ Malisa Dubal*
MALISA DUBAL
Assistant Chief
Criminal Division, Fraud Section
U.S. Department of Justice

*/s/*
HOWARD LOCKER
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice

*/s/ Claire T. Sobczak*
CLAIRE SOBCZAK
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice

Date: March 11, 2020

ORIGINAL

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover Sheet | Case Number<br>19-cr-20653 |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

**Companion Case Information**

| | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☐ Yes    ☒ No | AUSA's Initials: |

**Case Title:** USA v. Musood Gorges

**County where offense occurred:** Oakland County

**Check One:**   ☒ Felony    ☐ Misdemeanor    ☐ Petty

___Indictment/___Information --- no prior complaint.
___Indictment/___Information --- based upon prior complaint [Case number:
___Indictment/_✓_Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

**Superseding Case Information**

**Superseding to Case No:** 19-cr-20653      **Judge:** Hon. Victoria A. Roberts

☐ Corrects errors; no additional charges or defendants.
☒ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|
| Musood Gorges | 18 U.S.C. § 1349 | |

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

March 17, 2020
Date

Claire Sobczak
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone: 202-591-5418
Fax:   313-226-2621
E-Mail address: claire.sobczak@usdoj.gov
Attorney Bar #: IL 6310208

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.